**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHRISTOPHER LACCINOLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-cv-00160-WES-PAS |
| | ) | |
| U.S. VETERANS ASSISTANCE | ) | |
| FOUNDATION, INC., ROBERT | ) | |
| PIARO, DOES 1-10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFF'S MOTION FOR RECONSIDERATION

NOW COMES, the Plaintiff, Christopher Laccinole (the "Plaintiff"), by and through his undersigned counsel and respectfully requests that this Court reconsider its Order, granting the Motion to Stay Civil Proceedings Pending Criminal Proceedings, as filed by the Defendants, U.S. Veterans Assistance Foundation, Inc. ("USVAF") and Robert Piaro ("Piaro") (collectively, referred to as the "Defendants"). As grounds for the Plaintiff's instant Motion for Reconsideration, the Plaintiff states as follows:

### FACTUAL BACKGROUND

On or about September 12, 2023, the Defendants filed their instant Motion to Stay. Thereafter, the Plaintiff engaged the undersigned counsel to represent him with regard to this action. Immediately after being engaged, the undersigned counsel contacted the Defendants' counsel of record. Specifically, the undersigned contacted Attorney Daniel Treuden who is counsel of record for the Defendants. Attached hereto and incorporated herein by reference as <u>Exhibit A</u> is a true and correct copy of the email correspondence to Attorney Treuden, dated September 13, 2023.

The undersigned requested that Attorney Treuden allow the Plaintiff, and his recently retained counsel, an additional twenty (20) days to file an objection to the Defendants' Motion to Stay. *See* <u>Exhibit A</u>. On the same day, Attorney Treuden agreed to the undersigned's request for an extension to file an objection. *Id.* Therefore, the Plaintiff believed that an objection to the Defendants' Motion to Stay need not be filed until October 3, 2023.

However, on October 2, 2023, the Plaintiff's counsel received a notice that this Court granted the Defendants' Motion to Stay until resolution of Defendant Piaro's criminal case. The Plaintiff's objection to the Defendants' Motion to Stay, and attaches the same hereto as <u>Exhibit B</u>.

## LEGAL ANALYSIS

While there is no Rule of Procedure recognizing what the 10th Circuit has called '[the] creature known all too well as the 'motion to reconsider' or 'motion for reconsideration,'" a district court "always has the inherent power to reconsider its interlocutory rulings." *Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1243 (10th Cir. 2007). While courts should not vacillate back and forth, they should be open to reconsideration when convinced justice requires it or that their initial decision was in error.

*See Narragansett Indian Tribe v. Hendrickson*, No. 1:19-cv-00158-MSM-PAS, 2020 U.S. Dist. LEXIS 3653, at *1-2 (D.R.I. Jan. 7, 2020). Rather, a "court's inherent power gives it the ability to re-examine its interlocutory orders." *Adams v. Melnick*, No. 13-802ML, 2015 U.S. Dist. LEXIS 67985, at *12 (D.R.I. May 26, 2015) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)).

Based upon the agreement of counsel and in the interest of fairness and justice, the Plaintiff respectfully prays that this Court grant his Motion for Reconsideration and consider the arguments raised in Plaintiff's Objection to the Defendants' Motion to Stay.

## CONCLUSION

As a result of the foregoing, this Court ought to grant the Plaintiff's Motion for Reconsideration as to this Court's order on the Defendants' Motion to Stay because the Plaintiff's

Objection to the Motion to Stay has not been considered by this Court, as a result of the agreement by and between counsel to the parties. At the very least, the Plaintiff at least ought to have the opportunity for this Court to consider his arguments and contentions as to the Defendants' Motion to Stay.

Respectfully Submitted,
The Plaintiff,
By his Attorneys,

/s/ Vincent A. Indeglia
Vincent A. Indeglia, Esq. (#4140)
**INDEGLIA LUTRARIO**
*Attorneys at Law*
300 Centerville Road
Summit East, Suite 320
Warwick, RI 02886
Tel.: (401) 886-9240
Fax: (401) 886-9241
Email: Vincent@Indeglialaw.com

## CERTIFICATION

I hereby certify that I have, on this 3rd day of October, 2023, electronically filed this enclosed document with the Clerk of this Court using the CM-ECF System. All counsel of record have been served by electronic means.

/s/ *Christine Davies*

# **Exhibit A**

Thanks,

Daniel J. Treuden
Attorney and Counselor at Law

The Bernhoft Law Firm, S.C.
1402 E. Cesar Chavez Street
Austin, TX 78702
(512) 582-2100 telephone
(512) 373-3159 facsimile
djtreuden@bernhoftlaw.com

> On Sep 13, 2023, at 5:42 PM, Vincent Indeglia <vincent@indeglialaw.com> wrote:
>
> Thank you.
>
> **Vincent A. Indeglia**
> **INDEGLIA LUTRARIO**
> *Attorneys at Law*
> RI Office: 401-886-9240
> FL Office: 239-263-9816
> Cell: 401-258-3184
> Email: vincent@indeglialaw.com
>
> > On Sep 13, 2023, at 5:16 PM, Daniel Treuden <djtreuden@bernhoftlaw.com> wrote:
> >
> > Thank you, Mr. Indeglia.
> >
> > I have no problem including Mr. Laccinole on correspondence while you represent him since you've specifically requested that we include him. In our correspondence, however, we'll be addressing you or Attorney Quinn, not Mr. Laccinole.
> >
> > Regarding the extension of time, we have no objection to a 20-day extension to respond.
> >
> > On our side, Patrick Kane and I are handling the day-to-day aspects of the case. Attorney Robert Bernhoft has entered an appearance, and although I'm copying him here, he does not need to be copied on correspondence. Ms. Chappie is the Firm's

paralegal and should be copied on correspondence. Attorneys Brian Newberry and Joseph Murphy are local Rhode Island counsel. For now, both Attys. Newberry and Murphy should be copied on correspondence. Atty. Newberry is in a very long trial right now, and once that is complete, I do not believe Atty. Murphy will need to be copied anymore.

Daniel J. Treuden
Attorney and Counselor at Law

The Bernhoft Law Firm, S.C.
1402 E. Cesar Chavez Street
Austin, TX 78702
(512) 582-2100 telephone
(512) 373-3159 facsimile
djtreuden@bernhoftlaw.com

<BLF-Email-Signoff.jpg>

> On Sep 13, 2023, at 3:58 PM, Vincent Indeglia <vincent@indeglialaw.com> wrote:
>
> Dear Mr. Treuden,
>
> Please be advised that were engaged today to enter our appearance for the Plaintiff in this action, Christopher Laccinole. You should receive the entry this evening or tomorrow. Brendan Quinn from this office will also enter his appearance and he is cc'd on this email. Please cc all parties on this email including Mr. Laccinole in all correspondence. If you are uncomfortable contacting Mr. Laccinole with our entry on file we understand.
>
> In the meantime, we understand you have filed a Motion to Stay Proceedings. We are going to review that filing this week and let you know our position. We would ask that you provide us with the professional courtesy of extending the time to file an Objection to the Motion by 20 days from today's date. If this is not acceptable please let us know by close of business tomorrow so we can file a Motion with the Court to extend the time period.
>
> Sincerely,
> Vincent
>
> **Vincent A. Indeglia**

**INDEGLIA LUTRARIO**
*Attorneys at Law*
RI Office: 401-886-9240
FL Office: 239-263-9816
Cell: 401-258-3184
Email: vincent@indeglialaw.com
<Outlook-cid_image0.png>

CONFIDENTIAL NOTICE: This e-mail transmission (and or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception to this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

<BLF-Email-Signoff.jpg> <Outlook-cid_image0.png>

# **Exhibit B**

CHRISTOPHER LACCINOLE, )
        )
   Plaintiff,   )
        )
v.        )   CASE NO. 1:21-cv-00160-WES-PAS
        )
U.S. VETERANS ASSISTANCE )
FOUNDATION, INC., ROBERT )
PIARO, DOES 1-10, inclusive, )
        )
   Defendants.  )
_____)

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO STAY

NOW COMES, the Plaintiff, Christopher Laccinole (the "Plaintiff") and hereby objects to the Motion to Stay Civil Proceedings Pending Criminal Proceedings filed by the Defendants, U.S. Veterans Assistance Foundation, Inc. ("USVAF") and Robert Piaro ("Piaro") (collectively, referred to as the "Defendants"), and respectfully requests that this Court deny the said Motion of the Defendants.

### FACTUAL BACKGROUND

The Plaintiff filed this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.* ("RIDTP") (this "Action"). This Action is the third lawsuit that the Plaintiff filed against USVAF, as a result of the ongoing misconduct of the Defendants. *See* Pltf.'s Compl., page 2. Specifically, the Plaintiff filed his first lawsuit against USVAF in 2019, styled as *Laccinole v. US Veterans Assistance Foundation, Inc.*, Case No. 4CA-2019-00893, which was subsequently settled, pursuant to a release agreement between the Defendants and the Plaintiff (the "First Action"). *Id.* However, the Plaintiff was forced to file a subsequent action, styled as *Laccinole v.*

*US Veterans Assistance Foundation, Inc.*, Case No. WC-2020-0014, after the Defendants refused to tender payment, pursuant to the release agreement (the "Second Action").[1] *Id.* Despite the repeated delays and misconduct of the Defendants, and each of them, the Plaintiff continued to receive calls from the USVAF in or around December of 2019, all of which were unlawful under the TCPA and the RIDTPA. *Id.* at ¶¶ 23-36. Therefore, the Defendant filed this Action, again seeking to redress his grievances and protect his right to privacy, as such rights are afforded to him under the TCPA and RIDTPA. Importantly, each time the Plaintiff brought suit, he named US Veterans Assistance Foundation, Inc. as the named defendant, which was **never** raised as an issue by the Defendants.

Upon information and belief, Piaro is now 73 years old and is under criminal indictment in the United States District Court for the Southern District of New York in the matter styled as *United States v. Robert Piaro*, Case No. 23 Cr. 420 (S.D.N.Y.) (the "Criminal Action"). *See* Defs.' Mot. to Stay, Ex. A. Consistent with the Defendants' conduct in the First Action and the Second Action, the Defendants now seek to further delay these civil proceedings.

This Action (and all prior actions brought by the Plaintiff against the Defendants) relates to USVAF's unwanted and unsolicited calls to the Plaintiff, its use of automated telephone dialing systems ("ATDS"), as such term is defined under 47 U.S.C. § 227(a)(1) and the FCC 2008 Declaratory Ruling, and other unlawful telemarketing practices. In comparison, the Criminal Action relates to Piaro's use of USVAF and at least three (3) other political action committees ("PACs") to perpetuate a fraud by making misrepresentations to prospective donors and misusing donations received by the PACs. *See generally* Defs.' Mot. to Stay, Ex. A.

---

[1] The Second Action remains pending in the Superior Court and has been heard by the court on various motions of the parties.

This Action has been pending for more than two (2) years, since March of 2021. Despite the time for which this Action has been pending, minimal discovery has been conducted due to the Defendants' dilatory tactics. In August of 2021, Defendants' Counsel asserted for the first time that the Plaintiff sued the wrong entity (US Veterans Assistance Foundation, Inc.) and that the correct entity is US Veterans Assistance Foundation, LLC. Based upon the Plaintiff's investigation and the fact that the Defendants never once raised such issue in the preceding two (2) years of litigating the First and Second Actions, there is nothing to support the notion that US Veterans Assistance Foundation, LLC is the proper party here. Nonetheless, the Defendants' tactics in this Action have caused at least three (3) conferences with this Court, while the Plaintiff has continued to expend time and resources attempting to determine whether US Veterans Assistance Foundation, LLC is the real party in interest. These conferences have further burdened this Court's resources.

Accordingly, because of the age of Piaro and the ongoing delay tactics of the Defendants, this Court ought to DENY the Defendants' instant Motion to Stay.

## LEGAL STANDARD

A movant must carry a heavy burden to succeed in obtaining a discretionary stay of civil proceedings due parallel criminal proceedings. *See Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (citing *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983) (explaining that the movant must demonstrate "a clear case of hardship" to be entitled to a discretionary stay))

The decision as to whether to stay civil litigation proceedings is within the discretion of the trial justice. *See Narragansett Indian Meeting Church v. Johnson*, No. 121CV00332MSMPAS, 2023 WL 5094924, at *1 (D.R.I. Aug. 9, 2023) (internal citations omitted). In *Microfinancial, Inc.*

*v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004), the First Circuit identified following typical factors when ruling on a motion to stay discovery:

> (i) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (ii) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem; (iii) the convenience of both the civil and criminal courts; (iv) the interests of third parties; and (v) the public interest.

Additional factors have also been considered by the Court, including the good faith of the litigants and the "foot-dragging" that had already occurred. *Id.* at 79. The movant bears a "heavy burden" of demonstrating a "clear case of hardship" if a stay is not issued. *Id.* at 77. "'The pendency of a parallel or related criminal proceeding can constitute [a good] reason' for a stay, although a parallel criminal proceeding is not dispositive." *See Narragansett Indian Meeting Church v. Johnson*, No. 121CV00332MSMPAS, 2023 WL 5094924, at *1 (D.R.I. Aug. 9, 2023) (citing *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004)). Citing to "perhaps the leading practice guide on the subject," the United States District Court for the District of Massachusetts, noted:

> a general stay of all civil discovery is not by any means the best option available to the court or to the litigants. Stays can and should be tailored to avoid undue prejudice. By limiting both the time and subject matter covered in temporary deferrals of particular discovery, a Court can allow civil proceedings to progress as much as possible without prejudicing the relative interests of the litigants.

*See Green v. Cosby*, 177 F. Supp. 3d 673, 678–79 (D. Mass. 2016) (citing Parallel Civil & Criminal Proceedings, 129 F.R.D. at 211 (internal citations omitted)); *see also Microfinancial, Inc*, 385 F.3d at 78 ("The touchstone, of course, is that a district court's discretionary power to stay civil proceedings in deference to parallel criminal proceedings should be invoked when the interests of justice counsel in favor of such a course.") (internal citations omitted).

## LEGAL ANALYSIS

**I.** **The Defendants' Bad Faith Conduct In This Action Weighs Significantly In Favor Of This Court's Denial Of The Defendants' Motion to Stay.**

The Defendants have procrastinated throughout the pleading and discovery phases of this Action and entirely obfuscated these civil proceedings. This is evidenced by the transcript[2] of hearing before this Court on February 14, 2023, on the Plaintiff's Motion to Compel.[3] During the February 14th hearing, the Honorable Magistrate Justice Patricia A. Sullivan made clear that the Defendants' answer to the complaint made the Defendants' position and defenses very unclear. *See* Exhibit A, 15:14-20 ("[Piaro] needs to either defend himself or not. He set calls in motion. I don't think -- I don't see how, if the recipient of the call says, I received a bunch of these and they were prerecorded, based on me listening to them, and Mr. Piaro says, I have no idea what they did, and they deep-sixed all their documents so we'll never know, I'll never know, and I'll never figure it out, then –").

The Defendants' answer to the complaint was such that Magistrate Sullivan commented, "I mean, it seems to me, if Mr. Piaro can't say how the calls were made, then Mr. Laccinole has said how they were made, and Mr. Piaro can't defend himself; so the burden of proof is sustained as to that issue." *See* Exhibit A, 14:17-20; *see also* Exhibit A, 15:24-16:5 ("I mean, it seems to me, if Mr. Piaro's pleading defense is, I don't know, I can never know, I have no way of finding out, these ATC people will never tell me; that's one thing. If he intends to defend by saying, This was not an ADS, this was not prerecorded, then he needs to say so. He needs to say how he knows that. And I think that's pretty simple. I mean, he's got to do that.").

---

[2] Attached hereto and incorporated herein as Exhibit A is a true and correct copy of the transcript of the hearing before this Court on February 14, 2023.

[3] It ought to be noted that the Defendants characterization of the Plaintiff's discovery requests and the contents of the February 14, 2023 hearing are disingenuous at best.

Then, in producing their initial disclosures to the Plaintiff, the Defendants asserted that they did not make the calls complained of by the Plaintiff. Rather, the Defendants asserted that the calls were made by a third-party, Advanced Telephony Consultants, but failed to disclose any documents demonstrating the relationship between the Defendants and the third-party. Thus, Magistrate Sullivan concluded: "So that's what I'm going to do. I'm going to deny everything without prejudice, except I'm going to grant the motion to compel to the extent the motion to compel is – I'm going to order Mr. Piaro to make initial disclosures as to any entity that he controls, including the PAC that has been talked about so much, as well as Inc., and then we'll go from there." *See* <u>Exhibit A</u>, 24:3-9; *compare to* Defs.' Mot. to Stay, pages 4-5 ("Despite only alleging standard TCPA violations in his Complaint, Laccinole demanded a tidal wave of discovery related to fraud, sealed court filings from unrelated litigation involving non-parties, non-party bank records, a special master, and more." "The Court subsequently denied virtually all of Laccinole's expansive and aggressive motion to compel.").

Accordingly, this Court ought to DENY the Defendants' instant Motion to Stay as the Defendants have delayed this Action enough by and throughout their bad faith conduct, which is further described below.

## II.     The Interests Of The Plaintiff In Proceeding Expeditiously With This Action, And Avoiding The Prejudice To The Plaintiff Ought To Lead To This Court's Denial Of The Instant Motion.

Chiefly, the Plaintiff has a significant interest in expeditiously resolving this Action on the merits because of the bad faith conduct of the Defendants that, to date, has delayed and prevented any redress to the Plaintiff. The Plaintiff has made several attempts to get the Defendants to cease their unlawful telephone practices, to no avail. As described *supra*, this Action is the Plaintiff's third lawsuit against USVAF for its unlawful and harassing telemarketing practices, save one (1)

action, which was filed to enforce a valid settlement agreement. *See* Pltf.'s Compl., page 2. Despite the previous efforts of the Plaintiff and the repeated delays and misconduct of the Defendants, the Plaintiff still received calls from the USVAF in December of 2019, all of which were pre-recorded in an unlawful manner. *Id.* at ¶¶ 23-36. Thus, staying this Action in the name of the Criminal Action will only serve to advance the Defendants' ongoing pattern of delay, in addition to further delaying the Plaintiff's redress.

Secondly, the Plaintiff surely has an interest in the progression of this Action, even if there is a limited stay ordered by this Court. The Defendants, and each of them, both move this Court to stay this Action, pending a final conclusion of the Criminal Action. However, there is **no** need to bring the entirety of this Action to halt. In turn, Piaro is the only Defendant in this Action that is under a criminal indictment in the Criminal Action – no criminal indictments have been brought again USVAF, which is manifest from the face of the criminal indictment. *See* Defs.' Mot. to Stay, Ex. A.

The Plaintiff's interest in an expeditious resolution of this Action is further supported by the conduct of the Defendants throughout discovery, as described in Section I of this Memorandum.

Accordingly, the Plaintiff has been seeking redress from the Defendants for more than four (4) years, while the Defendants have consistently delayed the same and refused to honor a valid and binding settlement agreement with the Plaintiff. The true nature and purpose of the Defendants' Motion to Stay is merely to continue to delay the Plaintiff's redress and the Defendants' acknowledgment of their unlawful and bad faith actions. As a result of the foregoing, this Court ought to DENY the Defendants' Motion to Stay.

Finally, in the event that this Court believes a stay of this Action is necessary, the Plaintiff respectfully requests that this Court limit such a stay to apply only to Piaro, so as to allow this Action to proceed as much as possible against USVAF.

### III.     No Hardship Will Be Suffered By The Defendant, Should This Action Proceed In Tandem With The Criminal Action.

> [T]he Fifth Amendment protects a party from self-incrimination; it does not protect someone from having to invoke the right to avoid self-incrimination in the first place. "*There is no violation of due process where a party is faced with the choice of testifying \*223 or invoking the Fifth Amendment*." *Gellis v. Casey*, 338 F.Supp. 651, 653 (S.D.N.Y.1972); see *Kordel*, 397 U.S. at 7–8, 90 S.Ct. 763 (finding nothing improper about forcing a party either to testify at the risk of "forfeiting [his employer's] property" or to assert the Fifth Amendment privilege).

See *S.E.C. v. Caramadre*, 717 F. Supp. 2d 217, 222–23 (D.R.I. 2010) (emphasis added).

In *Microfinancial*, 385 F.3d at 78, the First Circuit Court of Appeals refused to give credence to the defendants argument that a civil trial during the pendency of a federal grand jury investigation would impose a burden upon the defendant's Fifth Amendment rights. Importantly, the First Circuit reasoned that the defendant had already been deposed **and signed an affidavit in opposition to the plaintiff's motion for summary judgment**. Similarly, here, Piaro has already executed a sworn declaration, "under the penalty of perjury," which is now known to contain false statements.[4] Piaro executed a declaration, which his counsel then emailed to the Plaintiff, in an effort to convince the Plaintiff that he sued the wrong entity and to get the Plaintiff to substitute USVAF for "US Veterans Assistance Foundation, LLC." *See* Declaration of Robert Piaro (ECF No. 21-2); *see also* Pltf.'s Memo. In Support of Mot. to Compel, pages 7-8 (ECF No. 38-1).

Secondly, the potential overlap between the substance of the Criminal Action and the substance of this Action is miniscule at best and does not justify a stay of these civil proceedings.

---

[4] Attached hereto and incorporated herein as <u>Exhibit B</u> is a true and correct copy of the Declaration of Robert Piaro, dated August 25, 2021, and filed with this Court at ECF No. 21-2.

This Action (and all prior actions brought by the Plaintiff against the Defendants) relates to USVAF's unwanted and unsolicited calls to the Plaintiff, its use of automated telephone dialing systems ("ATDS"), as the term is defined under 47 U.S.C. § 227(a)(1) and the FCC 2008 Declaratory Ruling, and other illegal telemarketing practices. In comparison, the Criminal Action relates to Piaro's use of USVAF and at least three (3) other political action committees ("PACs") to perpetuate a fraud by making misrepresentations to prospective donors and misusing donations received by the PACs. *See generally* Defs.' Mot. to Stay, Ex. A.

Furthermore, any testimony of Piaro in this Action is unlikely to yield a legitimate invocation of his Fifth Amendment privilege against self-incrimination and, even if Piaro does assert said privilege, the same is not protected. *See Caramadre*, 717 F. Supp. 2d at 222–23. For example, the following potential inquiries, which are wholly material to this Action, cannot realistically result in Piaro's invocation of his Fifth Amendment privilege against self-incrimination: (i) whether the Defendants obtained the valid consent of the Plaintiff to place telephone calls to the Plaintiff; (ii) whether the Defendants continued to place telephone calls to the Plaintiff after he made known his desire for such calls to stop; (iii) how many times the Defendants placed unlawful calls to the Plaintiff; (iv) whether USVAF engaged a third-party to make telemarketing calls on its behalf; (v) who made the decision on behalf USVAF to engage a third-party telemarketing provider; (vi) the terms of any such agreement to engage a third-party telemarketing provider on behalf of USVAF to engage; (vii) whether any ADTS was used by USVAF during its calls to the Plaintiff; and, (viii) the damages suffered by the Plaintiff.

While Piaro surely could attempt to assert his Fifth Amendment privilege in response to the above inquiries, the same would be frivolous and illegitimate, as the Fifth Amendment cannot be asserted on a "blanket basis." *See United States v. Castro*, 129 F.3d 226, 229 (1st Cir.1997);

*see SEC v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir.1981) (stating that the Fifth Amendment does not authorize "blanket assertion[s] of the privilege"); *United States v. Highgate*, 521 F.3d 590, 594 (6th Cir.2008) (finding that the district court "erred by not inquiring into the legitimacy or scope of [a witness's] claimed privilege" where the witness "made a blanket assertion of his privilege"). "It operates question by question, which requires the district court to conduct a 'particularized inquiry' into each claim of privilege." *See Caramadre*, 717 F. Supp. 2d at 222–23 (citing *Castro*, 129 F.3d at 229).

Despite the bare conclusory statements in the Defendants' Memorandum, the Defendants have not "proceeded in good faith throughout this litigation." *See Defs. Memo. In Support of Mot. to Stay* (ECF No. 58, page 6). More specifically, the Defendants assert:

> Throughout the case, Piaro has responded to all of Laccinole's discovery requests only objecting to matters that are way outside the bounds of relevance or matters that are harassing. Piaro has also settled disputable factual issues, and pressed forward with his own discovery only seeking information relevant to Piaro's standing defense, and his merits defenses.

*Id.* This is patently false. For example, the Defendants repeatedly allege that the Plaintiff refuses to believe that the Defendants' Rule 26 initial disclosures, which indicates that Advanced Telephony Consultants placed calls on behalf of the Defendants. *See* Def.'s Opp. to Pltf.'s Mot. to Compel, page 2. However, in reality, the Plaintiff's issue is that the Defendants, and each of them, continue to refuse to produce any documentation in support of their contention that Advanced Telephony Consultants placed the calls to the Plaintiff. *See* Pltf.'s Reply to Def.'s Opp., page 2.

Thus, this Court ought to DENY this Motion to Stay because the Defendants will suffer no hardship if this Action is permitted to proceed by this Court as Piaro has already executed and filed a sworn declaration (Exhibit B) and there is minimal, if any, overlap between this Action and the Criminal Action. *See Microfinancial*, 385 F.3d at 78; *see also Caramadre*, 717 F. Supp. at 222–

23 ("There is no violation of due process where a party is faced with the choice of testifying or invoking the Fifth Amendment.") (internal citations omitted).

**IV.  The Convenience Of The Courts In Both This Action And The Criminal Action Weigh In Favor Of Denying The Defendants' Instant Motion.**

The Defendants argue that, "[d]eciding civil issues here, 'before they have been addressed in the criminal proceeding, creates a risk of inconsistent outcomes because the rulings in this civil proceeding will not be binding in the criminal proceeding.'" *See Defs. Memo. In Support of Mot. to Stay* (ECF No. 58, page 9). For several reasons, this argument is unavailing. First, the issues that will be resolved in this Action are not material nor relevant to the Criminal Action. It is difficult to imagine why the Criminal Action would yield rulings as to the telemarketing activities of the Defendants, the use of ATDS by the Defendants, whether the Plaintiff has standing in this Action, nor whether the Defendants obtained the consent of the Plaintiff for the purpose of making telephone calls. Without any likelihood that the Criminal Action will render rulings similar or related to this Action, there can be no legitimate assertion that allowing both actions to proceed in tandem will result in inconsistent outcomes. Similarly, there is no realistic expectation that the Criminal Action will narrow the issues in this Action.

Moreover, it is in the Court's interest to resolve this Action so that the same may be removed from its docket. A stay of this Action will only delay the same, without any legitimate basis for the same. The Defendants have made clear their intent to muddy the waters of what should otherwise be a relatively straightforward lawsuit. All of the foregoing, of course, is in addition to the presumption in favor of a speedy resolution of civil actions, pursuant to Fed.R.Civ.P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court

and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Therefore, this Court ought to DENY the Defendants' Motion to Stay because the interests of this Court weigh in favor of such a denial.

## V.     The Interests Of The Public And Third Parties Weigh Heavily In Favor Of Denying The Defendants' Instant Motion.

Pursuant to Fed.R.Civ.P. 1, there is a presumption that the public has an interest in the prompt resolution of civil cases, which the movant has the burden to overcome. *See Microfinancial*, 385 F.3d at 79 (1st Cir. 2004) (noting that the movants offered nothing to offset the presumption under Fed.R.Civ.P. 1.).

The true extent of individuals who receive unlawful and unsolicited telephone calls from the Defendants is unknown, but surely significant in light of alleged profits obtained by the Defendants. *See* Defs.' Mot. to Stay, Ex. A. Given that the Plaintiff, who is in fact a veteran, has received numerous telephone calls from the Defendants, and the amount of money raised by USVAF from its telemarketing campaign,[5] it is only fair to assume that there is a large swath of people suffering from continued invasions of their privacy as a result of the Defendants' conduct. These are the third-parties who interests will be pushed aside if this Court grants the Defendants' Motion to Stay. The U.S. citizens who continue to receive calls from the Defendants and fall victim to the Defendants' scheme are the individuals who have a true interest in the resolution of this Action, which should result in the Defendants ceasing such activities.

On the other hand, the Defendants claim that "Several Potential Third-Party Witnesses Will Benefit from a Stay," but only identify Piaro's two (2) daughters as the individuals who would

---

[5] According to the Indictment (Exhibit A to Defendants' Motion to Stay), "Between in or about 2017 and 2022, [Piaro and USVAF] raised over $15.4 million from donors."

benefit from a stay. *See Defs. Memo. In Support of Mot. to Stay* (ECF No. 58, page 10). In connection therewith, the Defendants assert that the Plaintiff has embarked upon a phishing expedition by, *inter alia*, serving "deposition notices on Mr. Piaro's two daughters, who were for a time, assisting Mr. Piaro with the PACs as treasurers." *Id.* at page 5. However, it is abundantly clear that Piaro's daughters may have information material to this Action, given their high ranking positions in USVAF. In addition, the narrow and biased interests of Piaro's immediate family surely should not favor this Court's allowance of the Defendants' instant Motion.

In sum, the Defendants simply cannot satisfy their burden of overcoming the presumption that an expeditious resolution of this Action is in the public's best interest, pursuant to Fed.R.Civ.P. 1.

Accordingly, the interests of third-parties and the public cut in favor of this Court's denial of the Defendants' Motion to Stay because only a just resolution on the merits will be what halts the continued unlawful telemarketing campaigns of the Defendants.

## CONCLUSION

As a result of the foregoing, this Court ought to DENY the Defendants' Motion to Stay because:

A. The Defendants' dilatory conduct in the First Action, the Second Action and this Action, and obfuscation of the facts and issues in this Action have delayed these proceedings enough, *see Microfinancial*, 385 F.3d at 76 ("Much of the delay was attributable to the defendants' foot-dragging vis-a-vis discovery and to a variety of other stalling tactics.");

B. The Plaintiff has a clear interest in expeditiously resolving this Action, given he has been in litigation with the Defendants for more than four (4) years over substantially the same subject matter as this Action, *see Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899,

903 (9th Cir. 1989) (affirming denial of stay when civil action was pending for one (1) year); *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983) (upholding denial of stay when plaintiff would have suffered the financial risk of waiting an uncertain and potentially lengthy period of time before being able to collect any ensuing judgment from financially strapped defendants);

C. The Defendants will suffer no hardship if this Action is permitted to proceed by this Court because Piaro has already executed and filed a sworn declaration (<u>Exhibit B</u>) and there is minimal, if any, overlap between this Action and the Criminal Action, *see Caramadre*, 717 F. Supp. at 222–23 ("There is no violation of due process where a party is faced with the choice of testifying or invoking the Fifth Amendment.") (internal citations omitted);

D. It is more convenient for this Court to allow this Action to continue through litigation, as any further delay will only push off a just resolution, and allow this Action to continue to clog up this Court's docket;

E. The Defendants simply cannot satisfy their burden of overcoming the presumption under Fed.R.Civ.P. 1 that the public has an interest in the speedy resolution of civil cases;

F. Therefore, the Defendants have failed to satisfy their "heavy burden" in obtaining a discretionary stay of civil proceedings due parallel criminal proceedings. *See Microfinancial, Inc*, 385 F.3d at 77 (citing *Austin*, 705 F.2d at 5  (explaining that the movant must demonstrate "a clear case of hardship" to be entitled to a discretionary stay)); and,

G. In the event that this Court finds that a stay of this Action is necessary, the Plaintiff respectfully requests that such a stay be limited only to Piaro, and that the Plaintiff be permitted to continue discovery as to USVAF while the Criminal Action remains pending.

Respectfully Submitted,
The Plaintiff,
By his Attorneys,

/s/ Vincent A. Indeglia
Vincent A. Indeglia, Esq. (#4140)
**INDEGLIA LUTRARIO**
***Attorneys at Law***
300 Centerville Road
Summit East, Suite 320
Warwick, RI 02886
Tel.: (401) 886-9240
Fax: (401) 886-9241
Email: Vincent@Indeglialaw.com

<u>**CERTIFICATION**</u>

I hereby certify that I have, on this 3rd day of October, 2023, electronically filed this enclosed document with the Clerk of this Court using the CM-ECF System. All counsel of record have been served by electronic means.

/s/ *Christine Davies*

# **<u>Exhibit A</u>**

1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF RHODE ISLAND

3


4
    * * * * * * * * * * * * *   C.A. No. 21-cv-160-WES-PAS
5                           *
    Laccinole                 *
6                           *
         VS.                 *   FEBRUARY 14, 2023
7                           *
    U.S. Veterans Assistance  *
8    Foundation, Inc.         *
                            *
9    * * * * * * * * * * * * *   VIA VIDEOCONFERENCE

10

11


12          BEFORE THE HONORABLE PATRICIA A. SULLIVAN,

13                    MAGISTRATE JUDGE

14                 (Pre-trial proceeding)

15


16   APPEARANCES:

17   FOR THE PLAINTIFF:     CHRISTOPHER LACCINOLE, PRO SE
                            14356 N. SUMMERCHASE CIRCLE
18                          WILLIS, TEXAS  77318

19   FOR THE DEFENDANT:     DANIEL J. TREUDEN, ESQUIRE
                            THE BERNHOFT LAW FIRM, S.C.
20                          1402 E. CESAR CHAVEZ STREET
                            AUSTIN, TEXAS  78702
21
     Court Reporter:        Denise A. Webb, CSR-RPR
22                          One Exchange Terrace
                            Providence, RI  02903
23

24

25

```
 1   Via videoconference

 2   14 February 2023

 3           THE COURT:  We're on the record.  Yes, Martha?

 4           MS. SAUCIER:  Yes, your Honor.

 5           THE COURT:  The Court is in session in the matter

 6   of Christopher Laccinole versus U.S. Veterans Assistance,

 7   Inc.  This is Civil Action 21-160-WES.

 8       Pending before the Court for argument today is the

 9   Plaintiff's motion to compel Rule 26 disclosures, to compel

10   production of documents, to appoint a special master for

11   court-supervised depositions and for sanctions.

12       The parties have briefed the motion.  In fact, I have a

13   very significant quantum of information, most of which I've

14   looked at, I think.  And we are here today for argument.

15       So let's have everyone enter your appearances.

16   Mr. Laccinole, could you unmute yourself and enter your

17   appearance as the pro se Plaintiff.

18           MR. LACCINOLE:  Morning, your Honor.  My name is

19   Chris Laccinole.  I'm the Plaintiff in this case.

20           THE COURT:  All right.  And representing Defendant,

21   Mr. Trueden, Mr. Newberry, whoever wants to go first.

22           MR. NEWBERRY:  Well, your Honor, just for the

23   record, Brian Newberry for the Defendant.  Mr. Treuden --

24   Dan Treuden is here as pro hac counsel.  He'll be doing most

25   of the speaking.
```

1        My assistant, Kat Premose (phonetic), is listening in,

2    if you're curious who the other person is.

3            THE COURT:  Okay.  Good.  Thank you.  No worries

4    about that.

5            MR. TREUDEN:  Attorney Daniel Treuden appearing on

6    behalf of Defendants.

7            THE COURT:  All right.  Couple of preliminary

8    remarks about the motion, motions I guess, although, they're

9    all invented in a single motion.  I am disinclined to

10    appoint special masters.  I think that's an extraordinary

11    remedy.  Recent political dynamics would suggest it's

12    disfavored in the law.

13        I am very disinclined to order court-supervised

14    depositions.  Again, almost unheard of.

15        And I don't see this as a moment for serious

16    consideration of sanctions.  There's certainly been a lot of

17    confusion, but I think there's also been some lack of

18    clarity on the Plaintiff's side, so that -- I wouldn't say

19    that the confusion is caused by the Plaintiff.  That said,

20    there's a lot of confusion on all sides, so I don't see this

21    as a sanctions moment.

22        Those preliminary indications of my leaning could be

23    tipped some other way as we go through the argument, but I

24    seriously doubt it.

25        So I really prefer not to spend any time on those

1    issues.  Seems to me we're here on a simple garden variety

2    motion to compel.  And as with any motion to compel, I

3    believe that the focus of the motion needs to be on the

4    claims in the complaint, the defenses in the answer, and

5    that the discovery that's proportional and appropriate has

6    to flow from there.

7        Defendant argues, I think somewhat persuasively, that

8    fraud and deception are not elements of the TCPA claims.

9    They would be an element of the Deceptive Trade Practices

10   Act claim but only I think under Rhode Island law in the

11   event of a purchase, and there's no allegation in the

12   complaint that that happened.

13       So it seems that we really need to focus in on these

14   calls.  As I read the complaint, I think the operative

15   allegations are those that appear in the factual background

16   starting with paragraph 24 and continuing, which indicate

17   that calls began to come to the Plaintiff's cell phone in

18   December of 2019, that the caller identified himself as Paul

19   speaking on behalf of an entity described in the call as

20   U.S. Veterans Assistance Foundation and then making a

21   solicitation for a charitable donation to assist handicapped

22   and disabled veterans with supplies and medical treatment.

23   That's the call.  It's not a political solicitation; it's a

24   charitable solicitation.

25       The complaint also alleges that the Plaintiff received

1    certain invoices from the same entity purporting to bill him

2    for goods and services.  The complaint does not clearly say

3    that no goods and services were ordered; it's kind of

4    implicit.

5        The complaint does not allege that the Plaintiff was

6    fooled by these invoices into paying for things he had not

7    ordered; so that we've got a real problem with fraud in

8    terms of that allegation as the basis for it, because the

9    Plaintiff hasn't alleged that he was fooled.

10        On the defense side, there originally, I believe, is a

11    defense that the entity making the calls was an affiliate of

12    the charitable foundation, and that the affiliate is a

13    political action committee, which can assert a First

14    Amendment based defense, which I believe is a statutory

15    defense, based on political speech.

16        Plaintiff's discovery and investigation has certainly

17    given me enough information to suggest that, at best,

18    Mr. Piaro, who is a defendant, who is incredibly sloppy

19    about how he managed a PAC in a charitable organization with

20    a same name, except for the little bit on the end that

21    identified the nature of the entity, and that my

22    understanding is, although this is messy, I don't know if

23    that defense is still assertive or not.  And since discovery

24    is framed by defenses as well as claims, whether that

25    defense is being attempted I think is quite material.  So

1    that's a big issue when it comes to discovery.

2        If it's clear, as it seems to be, that the entity that

3    made these calls was a charitable organization, very sloppy

4    behavior by Mr. Piaro, at least as Plaintiff has developed

5    it in these papers in terms of maintaining the corporate

6    entity as a corporation and keeping the bank accounts from

7    being commingled and all the things that -- I mean, it may

8    very well end up being a veil piercing situation.

9        And that's certainly that if the right defenses are

10   asserted, the Plaintiff would certainly have the right to

11   get discovery on veil piercing so that whatever may be owed

12   in connection with the violations, TCPA violations, would be

13   paid ultimately by Mr. Piaro who didn't maintain the

14   corporate status properly and, therefore, is vulnerable

15   under the law for the State of Rhode Island for veil

16   piercing.  I don't know about that.

17       But that certainly comes to mind when you see the

18   amount of sloppiness that the (inaudible) stressed in terms

19   of respecting the corporate -- how the corporation sustained

20   themselves.

21       I have discovery responses in a document response filed

22   at 38.8, which appeared to indicate that the Defendant,

23   which is USFF, Inc. -- sorry -- USVAF, Inc. has virtually no

24   documents on any topic except for a handful of things which

25   have been produced; that is, it would appear that USVAF did

1    not conduct its business as a real business entity in that

2    it says it has no documents related to any employee manuals;

3    no such things exist.  So many of the usual things that you

4    would expect don't exist.

5         There is -- I think there are initial disclosures in

6    which the Defendant, and I'm referring to the Defendant as

7    named "Inc.," states that the calls were made by a third

8    party identified as Advantaged Telephony Consultants, LLC,

9    or ATC, limited number of documents related to that entity

10   have been produced.  And then there's a name of a Jose

11   Quinones, who is identified as the person at ATC who was

12   Mr. Piaro's contact for purposes of these calls.

13        So that's kind of what I see.  It seems as if that

14   means that the compel motion needs to zero in on Mr. Piaro

15   himself, any entities that he is controlling or operating,

16   and -- including, of course, Inc. -- starting with Inc.; and

17   that the inquiry needs to focus on what does he know about

18   these calls that his entity launched into commerce by having

19   ATC perform them.

20        What I wonder is whether a lot of discovery is even

21   needed, given that the Plaintiff's complaint alleges that we

22   have a prerecorded call, and the Defendant answers saying, I

23   don't know.  Seems to me the Plaintiff sustained the burden

24   of proof on that point once the Defendant says, I don't

25   know, and can prove his case.

1    So that was one of the things that I sort of said, Wait

2    a minute, what are the elements of the claim?  And the

3    complaint is really long and very confusing.  So I really

4    struggled to figure out, what are the elements of the

5    claims, what are the defenses; and in light of that, what

6    does the Plaintiff need, mindful that this may be a

7    situation where Mr. Piaro is compelled to produce without

8    regard to entity, since there's this threshold showing of

9    his sloppiness in what entity was doing what.

10    So he certainly can't stand on the defense of, Oh, that

11    entity wasn't a defendant.  He's a defendant.  He maintains

12    sloppiness, in corporate niceties, so he has to produce

13    everything.

14    But, maybe, if he has nothing, he can't defend himself;

15    Plaintiff's case is proven.  Obviously, none of this has

16    anything to do with what I understand, Mr. Treuden, your

17    defense, that the Plaintiff was soliciting calls, operating

18    a business, in effect.  That's a whole different kettle of

19    fish.

20    So that -- unless and until the case is dismissed on

21    that basis, this discovery needs to proceed, but I'm not

22    sure what needs to proceed.

23    I guess that's a long way of saying that I don't know

24    what I should be compelling, other than that something needs

25    to be compelled.  Although, maybe the right discovery hasn't

1    yet been propounded.

2        For example, an interrogatory -- a contention

3    interrogatory, what's the basis for your defense in pleading

4    that you didn't make these calls?  What are all the facts

5    that you have to rely on for that purpose?

6        And, of course, for Mr. Piaro, he can't say, Oh,

7    because one of my other entities made the calls.  I think

8    Mr. Piaro's discovery needs to respond as to all entities if

9    he has any kind of an ownership interest in them.  But that

10   discovery, as I understand it, hasn't been propounded.

11   Maybe a 30(b)(6) deposition of Mr. Piaro.  I don't know.  I

12   don't know.

13       But I'm really struggling to see what I should be

14   compelling on the platform of this motion, given that I

15   don't see this as a sweeping fraud case; I don't see this as

16   a case in furtherance of the FEC's investigation of

17   Mr. Piaro's PAC.

18       Mr. Laccinole did supply me with a copy of the report

19   from the FEC of an audit, which certainly doesn't make them

20   seem -- them being the USVAF PAC -- would be a very well run

21   organization, although ultimately the commission on split

22   votes didn't go with all the findings.  There sure is very

23   substantial evidence of sloppiness, which I think clearly

24   gives us the foundation for the discovery.  But the

25   discovery needs to be targeted on this issue in this case.

1    So, Mr. Laccinole, as the Movant, I want to have you

2    speak first.  But what I really want to hear from you is

3    what's in issue and to be proven in this case, and then what

4    discovery do you need in order to get that, and have you

5    even propounded that discovery yet.  So be sure to unmute

6    yourself.

7            MR. LACCINOLE:  Thank you, your Honor.  Can you

8    hear me?

9            THE COURT:  Yes.

10           MR. LACCINOLE:  You've given me quite a lot here,

11   so I'm going to try to work through these in the order that

12   you went through them.

13           So I should say at the outset, I did recently propound

14   discovery upon Mr. Piaro seeking out I think exactly what

15   you talk about, the interrogatories there, and trying to

16   find out -- and I guess to answer your question, what is the

17   motion to compel about is this is a case where it's about

18   telephone calls and who called me.

19           And so, your Honor, you have this information that I

20   have, which is a message of a gentleman named Paul who's

21   calling, making solicitations.  And when the Defendants

22   provide their defenses, they say, Well, it wasn't us.  You

23   know, it was some other entity that we don't have control

24   over.

25           And I'm unclear really how you get to that entity that

1    they don't have control over.  They seem to suggest that

2    Mr. Piaro, perhaps sloppily, but he's in control of these

3    entities that are fundraising for millions of dollars.

4         THE COURT:  Yeah.  So, Mr. Treuden, I realize I am

5    now asking about an answer, and that's probably more

6    properly done by Mr. Laccinole by an interrogatory, but he

7    alleges that in December and thereafter, December 2019 and

8    thereafter, USVAF called his phone.  That's a deny.  Then we

9    have a whole series of allegations about the calls

10   themselves, and those are all denied information.

11        So it seems as if the defense in this answer is, Inc.

12   didn't do it, LLC did it, which also seems to be something

13   that's picked up in your affirmative defenses.

14        Then, we have discovery that establishes pretty

15   dramatic sloppiness, in corporate niceties, potentially

16   permitting veil piercing.  And Mr. Piaro is a defendant.

17        So that answer, I don't know if you -- if it's

18   unpacked, who is answering there.  And at this point, given

19   everything that's happened in this case, seems to me this

20   answer, Inc. might answer by saying, I deny that I made it,

21   but my sister corporation did it.  Piaro says, I deny that

22   Inc. did it, by my LLC did it, so I did it.  I don't know.

23        Seems to me that's -- it's kind of cutting to the

24   chase.  Or the -- you know, maybe, you know, somebody lives

25   across the street from Mr. Laccinole for a joke who made

1    these phone calls, and they used the name of VAF.  And I

2    don't have a picture, so I don't know what the invoices look

3    like.  So I don't know how they describe -- but this is

4    plainly a charitable solicitation and not a political

5    message.  It seems kind of funny --

6           MR. LACCINOLE:  Can you hear me?

7           THE COURT:  I can hear somebody.

8           MR. LACCINOLE:  I'm sorry.  For about ten seconds

9    there everyone froze on my screen, so I missed ten seconds.

10          THE COURT:  Well, I'm asking you, given where we

11   now are, is the defense -- because that's going to frame

12   what can be compelled; what's the defense that's being

13   asserted here by -- we've got two defendants:  Piaro, who's

14   going to have a real problem with saying, Oh, that

15   corporation I'm not going to talk about, given all the

16   sloppiness here; and then Inc., which I understand is the

17   charity.  And I'm not sure that a PAC is allowed to make

18   charitable solicitations.  Maybe it is.  I don't know.  Go

19   ahead.

20         MR. TREUDEN:  Okay.  So we're -- originally, when

21   I -- when we made those answers, we believed that the wrong

22   entity was sued.  We still believe that the wrong entity

23   technically was sued.  But your point about the sloppiness,

24   the fact defenses are difficult because of the piercing.

25   And because there was a lot of commingling, we dropped that

1    defense.  But originally --

2              THE COURT:  Mr. Treuden just froze.  You're back.

3              MR. TREUDEN:  Okay.  So, hopefully -- well, maybe

4    I'll just start over, because I don't know how much you guys

5    missed.

6              THE COURT:  Almost nothing.

7              MR. TREUDEN:  Oh, okay.  Okay.  Good.  The defense

8    was never intended to say that, Oh, that wasn't the

9    corporation, that was the LLC that made the call.  Whether

10   it was the corporation or the LLC, the intent of that answer

11   was that they hired out a company that did the call, and

12   that company -- that third party company, Advanced Telephony

13   Consultants is the one that made the call and had -- has all

14   the records, whatever exists --

15             THE COURT:  Yeah.  So let me just ask you this; and

16   this will reveal my ignorance:  But if Mr. Piaro hires an

17   agent to make the phone calls and doesn't make them himself,

18   duh, and he tells that agent what to say and what to

19   solicit, and then he says, Hey, don't tell me how you do

20   this, but, yeah, you'll probably be prerecording calls using

21   an ADS, but just don't tell me; isn't he legally responsible

22   if they do?

23        Mr. Treuden is frozen.  Maybe that question was just a

24   freezing question.

25             MR. TREUDEN:  I got your question, and then it

1  froze.  No.  I understand that the -- he would be

2  responsible for -- legally responsible for the agent's

3  actions in that situation.

4  THE COURT:  Yeah.  So in this situation, if he

5  doesn't know, which seems to be what he's saying, I don't

6  know what they did in my name, and Mr. Laccinole had said,

7  It was a prerecorded call, and that's what the complaint

8  says, then you can't disprove it.  Mr. Piaro can't defend

9  himself.  So that element is proven, right?

10  MR. TREUDEN:  Well, I wouldn't submit that --

11  THE COURT:  But think it through.  I mean, if he is

12  running a business that's telemarketing, which we've got --

13  Mr. Laccinole has given me all of his documents that this

14  Inc. entity was set up as a charity to raise money for vets,

15  that's what the call was saying, it's identified as a

16  telemarketing company in various corporate documents filed

17  by Mr. Piaro, and -- I mean, it seems to me, if Mr. Piaro

18  can't say how the calls were made, then Mr. Laccinole has

19  said how they were made, and Mr. Piaro can't defend himself;

20  so the burden of proof is sustained as to that issue.

21  You may still have other defenses.  I don't think you

22  have the defense of, Oh, this was a political action

23  committee speech.  That one just doesn't hang together at

24  all.  I mean, I'm obviously not testing your defenses, but

25  it seems to me, as a defense to avoid discovery, that's a

1    nonstarter, especially given the contents of the call as

2    quoted in the complaint.

3              MR. TREUDEN:  Yeah.  I think in the context of

4    these motions to compel, I mean, the documents that are in

5    Advanced Telepathy's care are not in Piaro's control.

6              THE COURT:  Right.  But --

7              MR. TREUDEN:  And I --

8              THE COURT:  -- so what.  I mean, Advanced Telephony

9    says they can't find their documents.  They've presumably --

10   maybe they've gone to the dumpster because they know they're

11   in trouble.  I don't know.  But Mr. Piaro is the guy who's

12   the defendant here.

13             MR. TREUDEN:  Yup.

14             THE COURT:  He needs to either defend himself or

15   not.  He set calls in motion.  I don't think -- I don't see

16   how, if the recipient of the call says, I received a bunch

17   of these and they were prerecorded, based on me listening to

18   them, and Mr. Piaro says, I have no idea what they did, and

19   they deep-sixed all their documents so we'll never know,

20   I'll never know, and I'll never figure it out, then --

21             MR. TREUDEN:  You froze.  I'm sorry.  You froze

22   again.

23             THE COURT:  Yeah.  So, anyway, that's where I'm

24   kind of going.  I mean, it seems to me, if Mr. Piaro's

25   pleading defense is, I don't know, I can never know, I have

1    no way of finding out, these ATC people will never tell me;

2    that's one thing.  If he intends to defend by saying, This

3    was not an ADS, this was not prerecorded, then he needs to

4    say so.  He needs to say how he knows that.  And I think

5    that's pretty simple.  I mean, he's got to do that.  The

6    real question is, has he been asked yet, and maybe he

7    hasn't.

8         MR. TREUDEN:  I mean, I've asked him.  He doesn't

9    know what equipment they used.  He doesn't know any of that.

10   That's why we responded the way we did.  So we put up the

11   best defense we can.  And I understand your comments, but

12   we're not willing to admit yet that we won't be able to meet

13   a defense.

14       But, I mean, with regard to discovery, that's -- we

15   can't provide what we don't have.  I know that Mr. Laccinole

16   has tested and tried to get answers from Advanced Telephony.

17   I was surprised to hear about those, including the response.

18   So I --

19        THE COURT:  Yeah.  So let me just -- this is -- you

20   had asked, Mr. Treuden, and you're absolutely right, that I

21   needed to remind Mr. Laccinole that the rule does require,

22   when you issue a third-party subpoena, you have to serve a

23   copy of your third-party subpoena on the party, on

24   Mr. Treuden, before you serve it on the third party.

25        MR. LACCINOLE:  Could I just say, Judge, I did

1    send -- I don't know if you saw my reply, but I did send a

2    certified letter to Mr. Newberry.  And if I was supposed to

3    also send one to Mr. Treuden -- because I included it as an

4    exhibit in my reply.

5             THE COURT:  Oh, okay.

6             MR. LACCINOLE:  So the notice -- I understand the

7    notice provision and Rule 45.  So every single time in this

8    court that I have issued a subpoena in any case, I always

9    send -- that's probably -- the Court is probably getting

10   sick of it -- I always send everything certified return

11   receipt, so that way for this exact situation I've got a

12   written record.  I sent --

13            THE COURT:  Okay.  Enough said.

14            MR. LACCINOLE:  Okay.

15            THE COURT:  Your reply, frankly, focused on what

16   the compel was, and I actually found the FEC report quite

17   interesting.  So I missed that, that you also had that.

18   Sometimes when there's a lot of attachments --

19            MR. LACCINOLE:  I would ask -- I've actually had a

20   pretty good connection with Mr. Newberry.  I'm happy to

21   continue noticing -- if it would be preferable that I notice

22   both of them, I can do that.  But I thought, honestly, if I

23   sent it to Brian that that was good enough.

24            MR. LACCINOLE:  It just may have been an oversight.

25   I may have assumed it went to Dan too.  I usually forward

1    things on, and I wouldn't focus on that.

2            THE COURT:  Okay.  So we've got an accident.

3            MR. LACCINOLE:  No big deal.

4            THE COURT:  Yeah.  I think, Mr. Treuden, clearly,

5    you should have known about those in advance.  Mr. Laccinole

6    tried.  Sequence of events didn't quite work out, but it's

7    clear that it needs to be done in a way that gets it done.

8            MR. TREUDEN:  Right.  I'm fine with that.  I don't

9    know -- I don't know what happened.

10           THE COURT:  We don't need to unpack it.  But you

11   had asked me to clarify that, and it's clarified.  But --

12           MR. LACCINOLE:  Could I just say, though, for the

13   purposes of motion to compel, because that's what your Honor

14   says --

15           THE COURT:  Yeah.  That's what I'm focused on.

16   What should I be compelling?

17           MR. LACCINOLE:  I mean, if I had to stand before

18   you, Judge, and you're breathing down my neck on a sanctions

19   motion, I would move heaven and earth to produce whatever

20   documents I could to say, Okay, it was Advanced Telephony

21   Consultants, here's some invoices, here's something.  And

22   the idea of, Oh, well, we're kind of surprised about this,

23   why wouldn't you just pick up the phone?

24        Because, by the way, this company made millions of

25   dollars allegedly in campaign contributions for the FEC

1    reports.  You're telling me with that kind of relationship

2    they couldn't pick up the phone and say, Really?  You don't

3    have anything?  Like, we were paying you a lot of money for

4    all this stuff.

5        And the problem is -- and I don't want to get too far

6    afield here, but there's no record in any of the FEC reports

7    if they're saying it's a PAC.  Advanced Telephony

8    Consultants isn't listed in any of the PACs that Mr. Piaro

9    has.  So this gets back to my motion to compel the Rule 26

10   disclosures.

11       Who's calling me?  And this is a pretty basic question,

12   and they can't seem to answer.  They keep saying Advanced

13   Telephony Consultants.  But I tried.  I went down that hole

14   with the subpoena, and I got nothing.

15       I mean getting back to, if you're going to say it's

16   Advanced Telephony Consultants, how do you know that if you

17   don't have a single document to be able to evidence that and

18   there's nothing in the public record for the FEC, and as I

19   mentioned in my motion, the FEC requirements are that they

20   have to -- Mr. Piaro has to maintain records of this for

21   three years.

22       Yeah, he may be sloppy, but you're telling me this

23   company raised millions of dollars and --

24            THE COURT:  But I think -- it seems as if the PAC

25   didn't make these calls; it was the charity.  You've got the

1   right defendant.  They're not asserting that defense

2   anymore.  The answer ought to be amended.

3       And here's where -- I mean, it seems as if this case

4   has gotten kind of totally sidetracked by this -- by the

5   assertion of a clearly ineffective defense, Oh, the calls

6   were made by the PAC, and the PAC has this political speech

7   defense.

8       And I don't know who made the calls.  I'm guessing

9   Mr. Piaro probably can't definitively say who made the

10  calls, but some entity that he owns -- owned, controlled,

11  created made the calls, and he's a defendant, so he needs to

12  answer and he needs to disclose.

13      So what I'm kind of tempted to do is to grant the

14  motion to the extent that Mr. Piaro is ordered to do over

15  his initial disclosure.

16      What I wonder is, should I set a time for an amended

17  answer, because the answer really frames our -- the answer

18  frames the issues.  And if the defense of the actions

19  complained of were made by other -- actually, as I'm talking

20  out loud, I think, Mr. Laccinole, you need to issue

21  discovery that says, When you raise the defense of actions

22  complained of by Plaintiff were made by others, what are we

23  talking about?  What are we talking about?  Who is this?

24      In interrogatories, you can ask all those questions.

25  What the heck do you mean?  Maybe Mr. Treuden would want to

1    amend his answer and kind of clean it up.  I think that

2    would be smart.  Because at the moment, it's a mess.  But --

3            MR. LACCINOLE:  So, your Honor, I did issue -- I

4    believe my discovery that I issued several weeks ago, I've

5    got it down here that it's due -- I think, Dan, you can back

6    me up on this -- on February 21st.  So it's due in a week.

7            THE COURT:  You can't move to compel on that.

8            MR. LACCINOLE:  Right.

9            THE COURT:  So, Mr. Treuden, here's what I'm

10   thinking of doing.  Deny everything without prejudice,

11   except compel Mr. Piaro to make his initial disclosure,

12   because the initial disclosures that were made initially, at

13   least in terms of the ones I've seen, are just -- it's Inc.

14   and Piaro, and I can't -- you know, I think Piaro has to

15   make initial disclosures as to any entity that he controls.

16           MR. TREUDEN:  Okay.  Yeah.  I can -- maybe what I

17   can do is I can set up a -- I'll redo the supplemental

18   initial disclosures.  We last served some on September 20th,

19   2022.  And I can separate those out and just issue two

20   separate ones so that it's clear which one is Inc. and which

21   one is Piaro.

22           THE COURT:  Good.  Okay.  So I'm going to compel

23   just that, leaving to the next chapter compel on some of

24   these targeted interrogatories -- which I think

25   interrogatories or a 30(b)(6) deposition, interrogatories

1    are much less expensive -- those are the tools that really

2    come into play in this kind of a situation.

3        And, again, Mr. Laccinole, I think your case is not

4    about, Is this a reprehensible business enterprise, a

5    walking RICO; that's not this case.  This case is really

6    simple.  And that is, calls were made, you said they were

7    prerecorded, we have a defendant saying, I can't say one way

8    or the other whether they were prerecorded or not.  I think

9    the same denial of information on -- oh, actually -- okay.

10   There's a frontal denial on use of automatic dialing system.

11   So ask them, how did they know that.  In order to say they

12   denied that, they've got to know that.  So there you go.

13       The -- I think your pleading says that they did use an

14   ADS, and they say, No, we did not.  Mr. Piaro says, No, we

15   did not.  And I don't think Mr. Piaro can say that if he

16   wasn't the guy who sort of pushed the button on the computer

17   saying, All right, launch the calls.  Instead, he hired a

18   vendor to push that button.  He can't -- and he's asserting

19   that knowledge, then he's responsible for that -- whoever

20   pushed the button.  It doesn't matter who they were.

21       If the calls were made without his knowledge by

22   Mr. Laccinole's hypothetical neighbor across the street,

23   that's a different case.  But there's a ton of admissions,

24   answers and so forth in this case making it, seems to me,

25   pretty clear that Mr. Piaro launched these calls.  He's got,

1     you know, sort of an entity mess that in some cases where a

2     less persistent plaintiff might be an effective way to

3     defend the case.  But Mr. Laccinole is pretty persistent.

4          That said, this is not a case for depositions of the

5     fellow who's the managing agent of ATS.  I mean, obviously,

6     at some point, if Mr. Treuden is defending by saying, We

7     didn't know that ATS was making these calls, they were

8     acting on their own; then direct discovery to ATS, maybe

9     joining ATS in the case becomes what happens.  If ATS

10    doesn't exist anymore, maybe Mr. -- who's the guy?

11            MR. LACCINOLE:  (Inaudible)

12            THE COURT:  Whoever is the guy that's talked about

13    a lot.  So getting all of his e-mails.

14         I'm not ordering all of someone's personal e-mails to

15    be produced at this point.  It doesn't seem to me that's

16    relevant.

17         But there's -- either there are binding admissions here

18    so that Mr. Piaro cannot defend as to certain elements,

19    because he can't plead, certain things are proving, and as

20    to the rest, he can't say one way or the other; therefore,

21    what the Plaintiff says goes, or he can defend and then he

22    comes up with the facts.

23         And the key is there has to have been -- I think,

24    Mr. Laccinole, you can't rest on the initial disclosures and

25    just keep moving to compel on that.  If we move past initial

1    disclosures, we're really in discovery.  And I think

2    targeted discovery is what I need in order to take action.

3         So that's what I'm going to do.  I'm going to deny

4    everything without prejudice, except I'm going to grant the

5    motion to compel to the extent the motion to compel is --

6    I'm going to order Mr. Piaro to make initial disclosures as

7    to any entity that he controls, including the PAC that has

8    been talked about so much, as well as Inc., and then we'll

9    go from there.  Any disagreement with that approach,

10   Mr. Laccinole?

11        MR. LACCINOLE:  No.  That's fine, your Honor.

12   Thank you.

13        THE COURT:  Mr. Treuden.

14        MR. TREUDEN:  No.  Thank you.

15        THE COURT:  All right.  Court is in recess.

16

17

18

19

20

21

22

23

24

25

1

2

3                    C E R T I F I C A T I O N

4

5

6            I, Denise A. Webb, CSR-RPR, do hereby

7    certify that the foregoing pages is a correct

8    transcription from the official digital sound

9    recording of the proceedings in the above-entitled

10   matter.

11

12

13            Dated this 9th day of January, 2023

14

15

16            /s/ Denise A. Webb_____

17            Denise A. Webb, CSR-RPR
              Federal Official Court Reporter
18

19

20

21

22

23

24

25

# **Exhibit B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

|  |  |  |
|---|---|---|
| CHRISTOPHER LACCINOLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  <u>1:21-cv-00160-WES-PAS</u> |
| | ) | |
| U.S. VETERANS ASSISTANCE | ) | |
| FOUNDATION, INC., ROBERT | ) | |
| PIARO, DOES 1-10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF ROBERT PIARO**

I, Robert Piaro, hereby declare under penalty of perjury that:

1.      I manage the U.S. Veterans Assistance Foundation, Inc. (hereinafter the "Corporation") and the U.S. Veterans Assistance Foundation, LLC (hereinafter the "LLC").

2.      In 2017, the LLC was created in Nevada to run a political action committee (hereinafter "PAC"). In August 2017, the LLC filed a statement of organization with the Federal Election Commission and since then the LLC has operated the PAC.

3.      In 2017, the Corporation was running a charity, and has since discontinued active operations, although the Corporation has not dissolved. The Corporation never participated in any fundraising for the PAC.

1

4.    I have personal knowledge of the facts set forth in this Declaration and if called upon to testify could do so competently.

STATE OF WISCONSIN        )
                          )
COUNTY OF _Washington_    )

Robert Piaro personally came and appeared before me, the undersigned Notary, and he is either personally known to me or his identity was proven by sufficient identification, and he makes the foregoing statement and Affidavit on oath and affirmation of belief and personal knowledge.

Dated this ___25___ day of August, 2021.

_____
Robert Piaro

SWORN to and subscribed before me, this ___25___ day of August, 2021.

_____
Notary Public

My commission expires: __11/16/24__

2